IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| GARY SAWYER, et al., | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. G-06-CV-702 |
| | § | |
| E.I. DUPONT DE NEMOURS & CO., | § | |
| | § | |
| Defendant. | § | |

**ORDER DENYING DEFENDANT'S MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION AND DENYING DEFENDANT'S MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM AND ORDER OF STAY, ADMINISTRATIVE CLOSURE, AND CERTIFICATION FOR INTERLOCUTORY APPEAL**

This case was filed by fifty-two individuals formerly employed by Defendant E.I du Pont Nemours and Company, Inc. ("DuPont"). Plaintiffs allege that DuPont made fraudulent representations to them during employment discussions, and that they suffered damages as a result thereof. Now before the Court is DuPont's Motion to Dismiss for Lack of Subject Matter Jurisdiction and Motion to Dismiss for Failure to State a Claim. For the reasons outlined below, both Motions are **DENIED.**[1]

**I. Background**

In late 2002, DuPont announced plans to spin off a portion of their operations, including the Terathane unit, where Plaintiffs were employed. At the time of the announcement, Plaintiffs were all members of the Local 900C, International Chemical Workers Union Council, AFL-CIO (the "Union"). The Terathane unit was one of many units at DuPont's LaPorte facility under a single collective bargaining agreement. During contemplation of the spin-off, DuPont

---

[1] The Court does not consider this Order worthy of publication. Therefore, it has not requested and does not authorize publication.

management discussed the possible ramifications with Union representatives. Since some senior members of the Terathane unit had the right to transfer to other units of the plant, a spin-off of that unit without an accompanying transfer of all of the employees would require a reduction in force throughout the plant. In order to combat the possibility of a workforce reduction, the Union and management worked together to develop a plan whereby the employees could transfer to the new company, DuPont Textiles & Interiors, Inc. ("DTI"), and DTI would adopt a mirror image collective bargaining agreement and would offer employees comparable compensation and benefits. Plaintiffs claim that during their contemplation of the transfer offer, they specifically asked DuPont management about the possibility of a sale of DTI and that they were orally assured that DTI would not be sold. All Plaintiffs ultimately decided to transfer to DTI.

After the spin-off, DTI was promptly sold to Koch, expressly contrary to the alleged previous representations. As a result of the sale, Plaintiffs claim that they suffered damages as a result of lost wages, overtime, bonuses, stock options, and retirement age. Plaintiffs allege that at the time Defendant told them DTI would not be sold, DuPont was in fact <u>already</u> in negotiations with Koch. Further, they allege that Defendant needed Plaintiffs to transfer to DTI <u>in order to close the deal with Koch</u>.

DuPont has moved to dismiss this action for lack of subject matter jurisdiction, arguing that these claims are preempted by the National Labor Relations Act and must be brought before the National Labor Relations Board. Alternatively, DuPont argues that Plaintiffs' state-law claims for fraud and fraudulent inducement are preempted by ERISA and must be dismissed.

## II. Subject Matter Jurisdiction

"A case is properly dismissed for lack of subject matter jurisdiction when a court lacks the statutory or constitutional power to adjudicate the case." *Home Builders Ass'n of Miss. Inc.v.*

*City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998).  When a defendant contests jurisdiction, the plaintiff bears the burden of establishing that jurisdiction exists.  *See Harvey Constr. Co. v. Robertson-CECO Corp.*, 10 F.3d 300, 303 (5th Cir. 1994).

The National Labor Relations Act ("NLRA") and regulations promulgated thereunder were intended by Congress to govern protected labor activity and unfair labor practices.  *See* 29 U.S.C. § 141 *et seq.*  Through the NLRA, Congress has given broad administrative power to the National Labor Relations Board ("NLRB").  *See* 29 U.S.C. § 153.  The NLRB acts as a quasi-judicial body and decides cases in administrative proceedings.  The NLRA has been given broad preemptory effect by the Supreme Court which has held that "[w]hen an activity is arguably subject to § 7 or § 8 of the Act, the States as well as the federal courts must defer to the exclusive competence of the National Labor Relations Board if the danger of state interference with national policy is to be averted."  *San Diego Building Trades Council v. Garmon*, 359 U.S. 226, 245, 79 S. Ct. 773, 780, 3 L. Ed. 2d 775 (1959).[2]  However, a state cause of action may be sustained "if the behavior to be regulated is behavior that is of only peripheral concern to the federal law or touches interests deeply rooted in local feeling or responsibility."  *Belknap, Inc. v. Hale*, 463 U.S. 491, 497, 103 S. Ct. 3172, 3176, 77 L. Ed. 2d 798 (1983) (citing *Garmon*, 359 U.S. at 243-44, 79 S. Ct. at 778-79).  If Plaintiffs' claims fall within the preempted field articulated by the "*Garmon* doctrine," as Defendant argues, then this Court has no subject matter jurisdiction over such claims, and they must be dismissed.

Defendant argues that Plaintiffs' claims are subject to § 8 of the NLRA and are therefore preempted and must be brought before the NLRB.  Specifically, DuPont claims that Plaintiffs' allegations, if true, would be violations of 29 U.S.C. §158.  Section 158(a)(5) makes it unfair

---

[2] Section 7 of the NLRA governs the rights of employees to participate or refrain from participating in organized labor organizations.  Section 8 prohibits certain unfair labor practices and requires collective bargaining in certain circumstances.

labor practice for an employer "to refuse to bargain collectively with the representatives of his employees." 29 U.S.C. § 158(a)(5). Section 158(d) obligates employers to bargain collectively "with respect to wages, hours, and other terms or conditions of employment, or the negotiations of an agreement, or any question arising thereunder, and the execution of a written contract incorporating any agreement reached." 29 U.S.C. § 158(d). Accordingly, an "employer violates its duty to bargain collectively when it institutes changes in employment conditions without first consulting the union." *N.L.R.B. v. W.R. Grace & Co.*, 571 F.2d 279 (5th Cir. 1978). In deciding whether a state law cause of action is preempted, the Court must determine whether "the controversy presented under state law to the courts is identical to or different from that which could have been, but was not, presented to the National Labor Relations Board." *Sheet Metal Workers Local Union No. 54 v. E.F. Etie Sheet Metal Co.*, 1 F.3d 1464, 1469-70 (5th Cir. 1993). This "requires not only looking to the factual bases of each controversy, but also examining the interests protected by each claim and the relief requested." *Id.*

Defendant cites *Riedel Int'l d/b/a Willamette Tug & Barge Co.*, 300 NLRB 282 (1990) in support of its argument. In *Willamette*, the NLRB found that the employer "failed and refused to bargain in good faith within the meaning of Section 8(a)(5) of the Act concerning the effects of its decision to sell Willamette by failing to notify the Union of the decision until the day of the implementation of the decision, when it was virtually *fait accompli*." *Id.* at 282. Defendant argues that the conduct complained of by Plaintiffs would likewise be a violation of the NLRA, and is therefore subject to the jurisdiction of the NLRB.

The Court finds the holding of *Willamette* inapplicable to this case. In *Willamette,* the union complained that the employer failed to negotiate regarding the **effects** of the decision to sell the company once made. Here, Plaintiffs complain of the actual decision to sell the company

after allegedly promising not to.  That decision is not within the scope of *Willamette*.  In fact, the decision notes that "[t]he complaint does not allege that Respondent owed a duty to bargain over the decision to sell Willamette; the General Counsel has conceded that Respondent could make that decision unilaterally."  *Id.* at 284 (citing *First Nat. Maint. Corp. v. N.L.R.B.*, 452 U.S. 666, 681, 101 S. Ct. 2573, 2582).  Since the NLRA contains no requirement that an employer bargain over the actual decision to sell all or a portion of its business, Plaintiffs could not bring their claims for fraud and fraudulent inducement before the NLRB.  If DuPont had a duty not to sell DTI to Koch, that duty was created by state law prohibitions of misrepresentation alone.  Furthermore, even if DuPont complied fully with its obligations to bargain over the effects of the sale to Koch, it could still breach an applicable state law duty by misrepresenting its intentions.  Therefore, this case does not present claims regarding behavior arguably prohibited or protected by the NLRA, and this Court has jurisdiction.[3]  Accordingly, Defendant's Motion to Dismiss for Lack of Subject Matter Jurisdiction is **DENIED**.

### III. Failure to State a Claim

A party is entitled to dismissal under Fed. R. Civ. P. 12(b)(6) when an opposing party fails to state a claim upon which relief can be granted.  When considering a motion to dismiss for failure to state a claim, the Court accepts as true all well-pleaded allegations in the complaint and views them in the light most favorable to the plaintiff.  *See Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000) (noting that a court must construe the complaint liberally in favor of the plaintiff); *see also Malina v. Gonzales*, 994 F.2d 1121, 1125 (5th Cir.1993).  "A motion to dismiss under Rule 12(b)(6) is viewed with disfavor and is rarely granted."  *Collins*, 224 F.3d at 498.  A motion to dismiss should only be granted when it appears without a doubt that a plaintiff can prove no set of facts in support of his claims that would

---

[3] *See* 28 U.S.C § 1332.

entitle him to relief.  *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514, 122 S. Ct. 992, 998, 152 L. Ed. 2d 1 (2002); *see also Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S. Ct. 99, 102, 2 L. Ed. 2d 80 (1957); *Tuchman v. DSC Communications Corp.*, 14 F.3d 1061, 1067 (5th Cir. 1994).

Defendant argues that Plaintiffs' state-law claims for fraud and fraudulent inducement should be dismissed pursuant to Rule 12(b)(6) since they are completely preempted by the Employee Retirement and Income Security Act ("ERISA").  In enacting ERISA, Congress intended for ERISA's civil enforcement provisions to preempt state-law causes of action within the scope of the provision.  *See Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 107 S. Ct. 1549, 95 L. Ed. 2d 39 (1987).  "State law claims, regardless of how they are pleaded, are preempted if they 'relate to' an ERISA plan."  *Epps v. NCNB Texas*, 7 F.3d 44, 45 (5th Cir. 1993).  The phrase "relate to" is to be given its "broad common-sense meaning, such that a state law 'relate[s] to' a benefit plan 'in the normal sense of the phrase, if it has a connection with or reference to such a plan.'"  *Metropolitan Life Ins. Co. v. Mass.*, 471 U.S. 724, 739, 105 S. Ct. 2380, 2389, 85 L. Ed. 2d 728 (1985) (quoting *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 97, 103 S. Ct. 2890, 2900, 77 L. Ed. 2d 490 (1983)).  In determining whether a claim relates to an ERISA plan, the Fifth Circuit "applies a two prong test; that is, [the] Court asks: (1) whether the claim addresses areas of exclusive federal concern and not of traditional state authority, such as the right to receive benefits under the terms of an ERISA plan, and (2) whether the claim directly affects the relationship among traditional ERISA entities—the employer, the plan and its fiduciaries, and the participants and beneficiaries."  *Hobson v. Robinson*, 75 Fed. Appx. 949, 953 (5th Cir. 2003) (citing *Smith v. Tex. Children's Hosp.*, 84 F.3d 152, 155 (5th Cir. 1996); *Hubbard v. Blue Cross & Blue Shield Ass'n.*, 42 F.3d 942, 945 (5th Cir. 1995)).  The preemptive reach of ERISA, while broad, is not unlimited.  *See Smith*, 84 F.3d at 155.  "[S]ome state actions may affect employee

benefit plans in too tenuous, remote, or peripheral a manner to warrant a finding that the law 'relates to' the plan." *Id.* (quoting *Shaw*, 463 U.S. at 100 n.21, 103 S. Ct. at 2901 n.21).

In applying the two-pronged test laid out above to fraud and fraudulent inducement claims, the Fifth Circuit has held that certain claims were preempted while others were not. Upon carefully examining the facts of those cases, this Court respectfully determines that Plaintiffs' case is more similar to those where common-law fraud claims were not preempted by ERISA.

In *Christopher v. Mobil Oil Corp.*, 950 F.2d 1209 (5th Cir. 1992), the Fifth Circuit held that the plaintiffs' fraud and negligent misrepresentation claims were preempted by ERISA. In *Christopher*, Mobil's retirement benefits could be claimed by retirees in the form of an annuity or a lump sum payment. In order to be eligible for the lump sum payment, retirees had to have a net worth or an accrued pension benefit in excess of $250,000. The discount rate on the lump sum payments was originally 5%. Market conditions at the time made the lump sum option very attractive. On July 2, 1984, Mobil announced changes to its plan, the most relevant of which included an increase in the discount rate to 9.5% and in the eligibility threshold to $400,000. Retirement-age employees were given six months in which to retire under the old requirements. Since the new plan was substantially less attractive and open to fewer people, many employees opted for early retirement in the six-month window.

Unbeknownst to the employees, Mobil had inserted an exception in the plan which would allow it to waive the eligibility requirement. The exception was made to keep the plan in compliance with IRS rules which prohibit discrimination in favor of highly-compensated individuals. The plaintiffs alleged that the exception was intentionally hidden from them and that if they had known about it, they would not have taken early retirement. By waiting longer to

retire, those employees would have received a higher level of benefits that they actually did receive.

The Fifth Circuit found that the plaintiffs' state law fraud and misrepresentations claims were focused on "Mobil's amendment of an ERISA-governed employee benefit plan and Mobil's disclosure to its employees of the terms of the plan." *Id.* at 1218.  In holding that the claims were preempted, the Court noted that "superimposing state law fraud statutes on the elaborate ERISA provisions governing the content and timing of notice of plan provisions and amendments . . . would undercut the goal of uniform national regulation in the manner that [ERISA's preemption clause] seeks to prevent." *Id.* at 1219.

In this case, there is no such danger, and it is for that reason that the holding in *Christopher* is inapplicable.  Here, Plaintiffs contend that DuPont committed fraud by promising that it would not sell DTI when it in fact had the express intention of selling it.  In asking "whether the claim addresses areas of exclusive federal concern and not of traditional state authority, such as the right to receive benefits under the terms of an ERISA plan," the Court must answer "no."  *See Hubbard*, 42 F.3d at 945.  The alleged misrepresentation has nothing to do with an ERISA plan or the benefits Plaintiffs could hope or expect to receive thereunder.  In fact, it is the Court's understanding that Plaintiffs agree that both DuPont's plan and Koch's plan were administered correctly, and that the employees received the appropriate benefits under both of those plans.  It is the difference between the two plans which damaged Plaintiffs—damage which would not have occurred but for DuPont's misrepresentations.  While the Court expects that the bulk of Plaintiffs' damages will relate to the differences between two ERISA plans, it is academically conceivable that at least one Plaintiff did not suffer actual damages from this difference, but has suffered some other damage as a result of the alleged fraud.  The possibility

of that scenario highlights the Court's conclusion that the claims do not address areas of exclusive federal concern. Rather, Plaintiff's claims are state common-law and the comparison of two ERISA plans to determine damages is a connection that is so "tenuous, remote, [and] peripheral," that the action cannot be said to be one that "relates to" an ERISA plan. *See Shaw*, 463 U.S. at 100 n.21, 103 S. Ct. at 2901 n.21.

The measure of damages sought by Plaintiffs is very similar to that sought by the plaintiff in *Smith*, where the Fifth Circuit found that a claim for fraudulent inducement was not preempted by ERISA. In *Smith*, the plaintiff was employed by St. Luke's Hospital and had been employed long enough to qualify for health insurance with no restriction on coverage for pre-existing conditions. In an attempt to persuade Smith to leave St. Luke's for Texas Children's Hospital, another hospital under the same corporate umbrella, Texas Children's assured Smith that her benefits would remain the same once she moved to Texas Children's. Smith transferred and was diagnosed with multiple sclerosis very soon thereafter. Smith's claim for disability benefits was denied on the basis that her condition was preexisting, and she had not been at Texas Children's long enough to qualify for coverage.

In finding that Smith could maintain her claim for fraudulent inducement, the Fifth Circuit noted that:

> to the extent that Smith is claiming that she is entitled to disability benefits under Texas Children's ERISA plan, her claim is preempted. . . Here, however, Smith's fraudulent-inducement claim is not based solely upon Texas Children's denial of benefits to her under its ERISA plan. Rather, Smith alleges that she gave up her accrued benefits at St. Luke's in reliance upon Texas Children's alleged misrepresentation. Though ERISA preempts Smith's claims seeking benefits under Texas Children's ERISA plan, she may have a separate claim based upon the benefits that she had at St. Luke's and relinquished by leaving.

*Smith*, 84 F.3d at 155. This is clearly more analogous to Plaintiffs' case than *Christopher*, and this Court finds the Circuit's reasoning equally applicable to Plaintiffs' case.

Likewise, the Court finds that Plaintiffs' claims do not "directly affect[] the relationship among traditional ERISA entities—the employer, the plan and its fiduciaries, and the participants and beneficiaries." *See Hubbard*, 42 F.3d at 945.  In this case, Plaintiffs would have no claim against the plan, its administrators, or its fiduciaries since they do not argue that any plan was inappropriately administered.  Even though Plaintiffs are plan beneficiaries, they are not suing in that capacity.  Instead, they are making claims in their capacity as former employees who were convinced to transfer based on alleged misrepresentations of facts wholly outside the scope of any company's benefit plan.  Similarly, though DuPont was Plaintiffs' employer, it is not being sued based on its failure to provide benefits Plaintiffs claim they are entitled to--as is the normal course of an ERISA case.  Rather, the focus of this case will be on what Defendant said and whether it was misleading.  There are simply no allegations of wrongdoing based on the Parties' roles in an ERISA plan.  Accordingly, ERISA does not preempt Plaintiffs' claims of fraud and fraudulent inducement.

Since Plaintiffs' state-law claims are not preempted, they have stated a claim upon which relief can be granted, and Defendant's Motion to Dismiss is **DENIED**.

## IV.  Conclusion

For the reasons outlined above, Defendant's Motions to Dismiss are both **DENIED**.  However, the Court agrees with both sides that the conclusions in this Order involve a controlling question of law as to which there is substantial ground for difference of opinion, and that an immediate appeal from this Order would materially advance the ultimate termination of this litigation.  Accordingly, the Court **CERTIFIES** this case for immediate appeal.  *See* 28 U.S.C. § 1292(b).  The litigation in this action is therefore **STAYED** and **ADMINISTRATIVELY CLOSED** pending appeal.

**IT IS SO ORDERED.**

**DONE** this 24th day of April, 2007 at Galveston, Texas.

Samuel B. Kent
United States District Judge